## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

IN RE      DANIELLE LEMA           Case No. 16-12128
                                      Chapter 13
        Debtor

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

TO THE HONORABLE DIANE FINKLE:

Nationstar Mortgage, LLC, together with its successors and assigns ("Movant"), your moving party in the within Motion, respectfully represents as follows:

1.      Movant is an entity with an address of 350 Highland Drive, Lewisville, TX 75067-4177.

2.      The debtor, Danielle Lema (the "Debtor"), is an individual with a mailing address of 15 Ninth Street, East Providence, Rhode Island 02914.

3.      The Debtor is the obligor pursuant to a promissory note (the "Note") dated September 28, 2005, in the original principal amount of $261,800.00.   A copy of the Note is annexed as Exhibit "A."

4.      To secure the Note the Debtor executed in favor of, and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for American Brokers Conduit (the "Mortgage," together with the Note and any other loan documents executed in connection therewith, the "Loan Documents") dated September 28, 2005, securing the Note and encumbering the property located at 15 Ninth St, East Providence, Rhode Island 02914 (the "Property").   A copy of the Mortgage is annexed as Exhibit "B."

5.      There is no other collateral to secure the Note.

6.      Movant is the current holder of the Loan Documents by virtue of an

Assignment of Mortgage, a copy of which is annexed as Exhibit "C."

7.      On December 12, 2016, the Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode Island.

8.      As of February 5, 2018, the total amount due and owing pursuant to the Loan Documents was $350,762.06 in principal, accrued interest, late charges, miscellaneous fees, and attorneys' fee and costs.

9.      There is a pre-petition arrearage in the amount of $139,403.14 due and owing under the Loan Documents.

10.     As of February 5, 2018, the last payment received from the Debtor was on December 7, 2017 in the amount of $1,941.84 and was applied to November 1, 2017.

11.     As of February 5, 2018, there is a post-petition payment arrearage owing under the Loan Documents in the amount of $5,825.52, less the Suspense amount of $27.94.  This amount is exclusive of attorneys' fees, costs, and expenses in connection with this Motion.

12.     The regular monthly payment due at this time is approximately $1,941.84, by virtue of a Loan Modification Agreement.  A copy of the Agreement is annexed as Exhibit "D."

13.     Based upon Schedule D and the amount presently due under the Loan Documents, the total amount of encumbrances on the Property is approximately $355,393.38, and includes the following additional liens:

    a.  *A scheduled lien to the City of East Providence, in the claim amount of $4631.32.*

14.     The Debtor's Schedules list a fair market value for the Property of

$246,900.00.

15.     For purposes of this Motion only, Movant asserts that the liquidation value of the Property is $230,410.14, calculated at the Debtor's value less a reasonable realtor's fee of 6%; deed stamps; and costs incurred in a real estate closing estimated to be $550.00.

16.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause on the basis that the Debtor is in default of the payment obligations resulting in an arrearage under the Loan Documents.

17.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) as there is no equity in the Property and it is not necessary for an effective reorganization.

WHEREFORE, Movant requests that the Court:

(1) Grant relief from the section 362 automatic stay and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its various non-bankruptcy rights and remedies including, without limitation:

a.  taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or foreclosing the Mortgage; and

 b.  taking such action as may be necessary to evict the Debtor or any occupant from the Property.

(2)  Order such other and further relief as may be just and proper.


**[Signature on Following Page]**

3

MOVANT
By Its Attorney,

/s/ James G. Atchison
James G. Atchison, Esq.
Bar No. 7682
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, Rhode Island 02860
(401) 272-1400 phone
Dated: February 28, 2018          (401) 272-1403 fax
jatchison@shslawfirm.com

## CERTIFICATION

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## RIGHT TO FORECLOSURE

Nationstar Mortgage services the loan on the property referenced in this Motion for Relief from Stay. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of "Nationstar Mortgage LLC" Noteholder.

Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the Motion for Relief from Automatic Stay and the proposed Order were served upon the following parties by causing true and correct copies of the same to be sent via electronic notice or via first class mail postage pre-paid, as indicated, on February 28, 2018:

Via Electronic Notice:

Gary L. Donahue, Esq.
Office of the United States Trustee
ustpregion01.pr.ecf@usdoj.gov

John Boyajian, Esq.
mail@13ritrustee.com
*Chapter 13 Trustee*

Edward J. Gomes, Esq.
attyejg@yahoo.com
*Debtor's Counsel*

Via First Class Mail:

Danielle Lema
15 Ninth Street
East Providence RI 02914

City of Providence
25 Dorrance Street
Providence, RI 02903

Nationstar Mortgage, LLC
PO Box 619096
Dallas, TX 75261-9741

/s/ James G. Atchison

UNITED STATES BANKRUPTCY COURT        R.I. Local Bankr. Form R
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - *

In re:   DANIELLE LEMA

                            :       BK No.  16-12128
                                  Chapter  13

      Debtor

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - *

## <u>RELIEF FROM STAY WORKSHEET – REAL ESTATE</u>

I_____ (Name and Title) of Nationstar Mortgage, LLC
(hereinafter, "Movant") hereby declare (or certify, verify, or state):

## BACKGROUND INFORMATION

1.  Real property address which is the subject of this motion:
    15 Ninth Street, East Providence, Rhode Island 02914.

2.  Lender Name: Nationstar Mortgage LLC.

3.  Date of Mortgage:  September 28, 2005.

4.  Post-Petition payment address:  PO Box 619094, Dallas, TX 76241-9741.

5.  The manner in which the movant perfected its interest in the property:

    See Exhibits attached.

6.  All other material liens and encumbrances on the property:

## DEBT/VALUE REPRESENTATIONS

7.  Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of
    filing the motion:  $350,762.06 as of 2/5/2018.
    (Note: this amount may not to be relied on as a "payoff" quotation.)

8.  Movant's estimated market value of the real property: $246,900.00.

9.  Source of estimated valuation:  Debtor's Schedule D.

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:

      A.  Amount of principal:  $222,248.19.
      B.  Amount of interest:  $71,409.12.
      C.  Amount of escrow (taxes and insurance):    Taxes:  $40,453.78
                                                       Insurance:
      D.  Amount of forced placed insurance expended by Movant: .
      E.  Amount of Attorney's fees billed to Debtor(s) pre-petition:  .
      F.  Amount of pre-petition late fees, if any, billed to Debtor(s):  $6,656.08.

11. Contractual interest rate: 6.25%  (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:  __.)

12. Please explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:
BPO/ Appraisal:
Inspections:
(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:  __.)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
## AS OF 2/05/2018

13. Date last payment was received:  12/7/2017, applied to 11/01/2017.

14. Alleged total number of payments post-petition from filing of petition through payment due on 12/01/2017:  Three (3) missed payments.

15. Please list all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| 12/01/2017 | $1,941.84 |
| 1/01/2018 | $1,941.84 |
| 2/01/2018 | $1,941.84 |
| **Totals:** | **$5,825.52** |

*Less Suspense Amount $27.94:    $5,797.58*

## SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|------|-----------------|------------------------------------------|--------------------------|----------------------------|-------------------------------------------------|
| 10/23/17 | $1,969.78 | Applied to 10/2017 | | | |
| 12/06/17 | $1,941.84 | Applied to 11/2017 | | | |
| **Totals:** | **$3,911.62** | $ | $ | $ | |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $850.00.

17. Amount of Movant's filing fee for this motion: $181.00.

18. Other Attorney's fees billed to Debtor post-petition:   $0.00.

19. Amount of Movant's post-petition inspection fees:   $0.00.

20. Amount of Movant's post-petition appraisal/broker's price opinion:   $0.00.

21. Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00.

22. Sum held in suspense by Movant in connection with this contract, if applicable:  $27.94.

23. Amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $94,381.79.

24. Amount and date of post-petition payments offered by the debtor and refused by the Movant: $__N/A_____    ;       Date(s):_____

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits A - D.)

(2)      Copies of documents establishing proof of standing to bring this Motion. (Exhibit _____.)

(3)      Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibit _____.)


## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matter, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows: _____.


I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on_____ [date]


_____
[signature]


_____
[title]


Subscribed and sworn to before me this _____ [date]


_____
Notary Public: [Name]


My commission Expires:_____
                          [date]

# EXHIBIT A

## ADJUSTABLE  RATE  NOTE
### (6-Month LIBOR Index - Rate Caps)
**(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)**

**THIS NOTE CONTAINS  PROVISIONS  ALLOWING FOR CHANGES  IN MY INTEREST  RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST  RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

September 28, 2005                 East Greenwich                     Rhode Island
[Date]                                [City]                              [State]

15 Ninth Street, East Providence, RI   02914
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S.$ 261,800.00                (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of
6.250  %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default
described in Section 7(B) of this Note.

### 3.  PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on    November 1, 2005                    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on    October 1, 2035                    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at ·    PO Box 660029, Dallas, TX  75266-0029

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S.$  1,611.95                . This amount may change.

#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.
The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section
4 of this Note.

DOC #                              APPL. #
**MULTISTATE  ADJUSTABLE   RATE  NOTE · 6-Month  LIBOR  Index  (Assumable   during  Life  of  Loan)  (First  Business   Day
Lookback)  - Single  Family - Freddie  Mac UNIFORM  INSTRUMENT**

VMP®-815N  (0404)        UM31 0404       Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                    Initials: _DmL_

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   October,   2010                   , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   Two and One Quarter                   percentage point(s) (                    2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                    11.250   % or less than                    2.250   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One                     percentage point(s) (                    1.000   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than          11.250 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

DOC #           APPL 

VMP-815N  (0404)                                   Page 2 of 4                                   Form 5520 3/04
Initials: 

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of       Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                         5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

DOC #          APPL # 

VMP®-815N (0404)                Page 3 of 4

Form 5520 3/04
Initials: 

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Danielle Lema                  -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

                                               PAY TO THE ORDER OF

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

                                               WITHOUT RECOURSE
                                               BY. AMERICAN BROKERS CONDUIT

_____ (Seal)          KARL BRISARD           _____ (Seal)
                               -Borrower       ASST. SECRETARY                -Borrower

                                               *[Sign Original Only]*

DOC #  ▮▮▮▮▮          APPL # ▮▮▮▮▮

VMP-815N (0404)              Page 4 of 4                              Form 5520 3/04

009636

BK 2545 PG 263

EXHIBIT  B

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747


Prepared By:
Charlene Huard
300 Bedford Street
Entrance D
Manchester, NH
03101

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

MIN ▮▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated September 28, 2005                          ,
together with all Riders to this document.
(B) "Borrower" is Danielle Lema


Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

DOC  #▮▮▮▮           APPL #▮▮▮▮▮▮▮

RHODE ISLAND - Single Family - Fannie Mae/Freddie  Mac UNIFORM INSTRUMENT  WITH MERS

Ⓜ -6A(RI) (0205)           Form 3040 1/01
Page 1 of 15      UM31 9905.02      Initials: DML

VMP MORTGAGE FORMS - (800)521-7291

BK 2545 PG 216

(D) "Lender" is  American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York
Lender's address is  538 Broadhollow Road, Melville, NY  11747

(E) "Note" means the promissory note signed by Borrower and dated  September 28, 2005
The Note states that Borrower owes Lender Two Hundred Sixty One Thousand Eight
Hundred and No/100                                                          Dollars
(U.S. $ 261,800.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    October 1, 2035        .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used

DOC                           APPL #                        Initials: DML

-6A(RI) (0006)                        Page 2 of 15                        Form 3049  1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the County                              of Providence                              :
                    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
See attached legal description

Parcel ID Number:  M 106 B1 27 P 6                          which currently has the address of
15 Ninth Street                                                                      [Street]
East Providence                       [City] , Rhode Island       02914       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC #████████         APPL #████████         Initials: DmL

-6A(RI) (0006)                     Page 3 of 15                              Form 3040  1/01

BK2545PG246

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



DOC                              APPL                              Initials: DML

-6A(RI) (0005)                  Page 4 of 15                      Form 3040  1/01

BK2545PG247

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.



DOC #                      APPL #                    Initials: DML

-6A(RI) (0006)                      Page 5 of 13                      Form 3048  1/01

BK 2545 PG 248

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.



DOC                         APPL

-6A(RI)                     Page 6 of 15                    Form 3040  1/01

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its



DOC

APPL

Initials: DML

-6A(RI) (0005)    Page 7 of 13    Form 3040 1/01

BK 2545 PG 250

secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



DOC #                    APPL                    Initials: DM

-6A(RI) (0005)                    Page 8 of 15                    Form 3040  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or



DOC                               APPL                          Initials: DML

-6A(RI) (0005)                    Page 9 of 15                              Form 3040 1/01

BK2545PG252

any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but



DOC #                    APPL                              Initials: DML

-6A(RI) (0005)                    Page 10 of 15                              Form 3040  1/01

BK2545 PG253

such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.



DOC        APPL        Initials: DML        Form 3040    1/01

-6A(RI) (0008)        Page 11 of 15

BK 2545 PG 254

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



DOC

APPL

Initials: DML

-6A(RI) (0005)          Page 12 of 15          Form 3040   1/01

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.



DOC ▮▮▮▮        APPL ▮▮▮▮        Initials: _DML_

-6A(RI) (0005)        Page 15 of 15        Form 3040  1/01

BK 2545 PG 256

**26. Loan Fees.** Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

| | |
|---|---|
| Origination - Discount Fees (points) | $ |
| Application Fees | $ |
| Closing Preparation Fees | $ 435.50 |
| | $ |
| | $ |

As provided in Rhode Island General Laws Section 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                               Danielle Lema          -Borrower

_____     _____ (Seal)
                                                       -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                 -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                 -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                 -Borrower

* Signs as "Borrower" solely for the purpose of waiving homestead rights.

DOC  ▮▮▮▮          APPL ▮▮▮▮▮▮▮

-6A(RI) (0005)          Page 14 of 15          Form 3040  1/01

BK2545PG257

**STATE OF RHODE ISLAND,**                                    County ss:  _Provide_

On this   28th     day of      September, 2005   , in  _East Provide_ . _Ro_
in said County, before me personally appeared    Danielle Lema

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

Notary Public

DOC #

APPL

-6A(RI) (0005)                              Page 15 of 15                         Form 3040  1/01

BK2545PG258

### EXHIBIT A

That certain lot or parcel of land with all the buildings and improvements
thereon, situated on the westerly side of Ninth Street in the City of East
Providence, County of Providence, State of Rhode Island, laid out and designated
as Lot Numbered 344 (two hundred forty-four) and the southerly five (5') feet
in width by the entire depth of Lot Numbered 345 (two hundred forty-five) on that
plat of land entitled: "PLAT OF LAND IN GENERAL BELONGING TO JOSHUA MAUDAN
SURVEYED SEPT. 12TH 1845 COPIED BY CUSHING & WALLING NOV. 1847, RECORDED MAY
1877 R.R. CUSHING", which said plat is recorded in the Records of Land Evidence
in said City of East Providence in Plat Book 63.

BK 2545 PG 259

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 28th day of September, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to American Brokers Conduit

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
15 Ninth Street, East Providence, RI 02914

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 6.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of October, 2010, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

DOC #████████     APPL #████████
MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT    UM51████
⊙-815R (0404)   Form 5120 3/04
Page 1 of 4   Initials: DM
VMP Mortgage Solutions
(800)521-7291

**(B) The Index**

Beginning  with the first Change  Date, my interest  rate will be based  on an Index.  The "Index"  is the six month  London  Interbank  Offered  Rate ("LIBOR") which  is the average  of interbank   offered   rates   for six-month   U.S. dollar-denominated   deposits   in the  London market,  as published   in The Wall Street  Journal . The most  recent  Index figure  available  as of the first business  day of the month  immediately  preceding  the month  in which the Change  Date occurs is called the "Current Index."

If the  Index  is no longer  available,  the Note Holder  will choose  a new index  which  is based upon comparable  information. The Note Holder will give me notice of this choice.

**(C) Calculation  of Changes**

Before  each  Change  Date,  the Note Holder  will calculate  my. new  interest  rate  by adding   Two and One Quarter percentage point(s) (                2.250 %) to the Current  Index.  The Note Holder  will then round  the result  of this addition  to the nearest  one-eighth  of one percentage  point  (0.125%). Subject  to the limits stated  in Section  4(D) below,  this rounded  amount  will be my new interest rate until the next Change Date.

The Note  Holder  will then determine  the amount  of the monthly  payment  that would be sufficient  to repay the unpaid  principal  that I am expected  to owe at the Change  Date in full on the maturity  date at my new interest  rate in substantially  equal payments.  The result  of this calculation will be the new amount of my monthly payment.

**(D) Limits  on Interest  Rate  Changes**

The interest  rate I am required  to pay at the first Change  Date will not be greater  than 11.250 % or less than                    2.250 %. Thereafter,  my interest  rate will never be increased or decreased on any single Change Date by more than One                      percentage point(s) (              1.000   %) from the rate of interest  I have been paying  for the preceding  six months.  My interest  rate will never  be greater than        11.250  %.

**(E) Effective  Date  of Changes**

My new interest  rate will become  effective  on each Change  Date. I will pay the amount of my new monthly  payment  beginning  on the first monthly  payment  date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice  of Changes**

The Note Holder  will deliver  or mail to me a notice  of any changes  in my interest  rate and the amount  of my monthly  payment  before  the effective  date of any change.  The notice will include  information  required  by law to be given  to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

DOC #███████        APPL #███████

Initials: DML

VMP -815R  (0404)                    Page 2 of 4                    Form 5120 3/04

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC #  ██████████      APPL #  ██████████

Initials: DML

-815R  (0404)                    Page 3 of 4                    Form 5120 3/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Danielle Lema_ _____ (Seal)
Danielle Lema      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

DOC # ███████      APPL # ███████

-815R (0404)        Page 4 of 4          Form 5120 3/04

BK2545PG263

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   28th      day of  September, 2005      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  American Brokers Conduit

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:
15 Ninth Street, East Providence, RI  02914

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity,
gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods,
attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if
the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

DOC  #                      APPL #
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

UM31 0008                    Page 1 of 4
-57R (0008)         VMP MORTGAGE FORMS - (800)521-7291         Form 3170 1/01

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER´S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER´S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

DOC # [redacted]                    APPL # [redacted]

Initials: DmL

-57R (0008)                         Page 2 of 4                    Form 3170 1/01

BK 2515 PG 265

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

DOC #                    APPL #

Initials: DML

-57R (0008)            Page 3 of 4            Form 3170 1/01

BK 2545 PG 266

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4
Family Rider.

_Danielle Lema_ _____ (Seal)    _____ (Seal)
Danielle Lema            -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                -Borrower

DOC  #                  APPL #                      Form 3170 1/01
-57R                              Page 4 of 4

2005 SEP 28  AM 10: 32
EAST PROVIDENCE, R.I.
DANA L. TOY
CITY CLERK

R.C.R.

DOC #  00001349

Recording Requested By:
AURORA LOAN SERVICES

Bk = 3044 Pg = 195

When Recorded Return To:

Rhonda Gall
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

EXHIBIT C

ₚC

**CORPORATE ASSIGNMENT OF MORTGAGE**

East Providence City, Rhode Island
SELLER'S SERVICING #: ▮▮▮▮▮ "LEMA"
OLD SERVICING #:

MERS #: ▮▮▮▮▮▮ VRU #: 1-888-679-6377

Date of Assignment: February 27th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: FEDERAL NATIONAL MORTGAGE ASSOCIATION at 3900 WISCONSIN AVENUE NW, WASHINGTON, DC 20019 2899

Executed By: DANIELLE LEMA  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR AMERICAN BROKERS CONDUIT
Date of Mortgage: 09/28/2005 Recorded: 09/28/2005 in Book/Reel/Liber: 2545 Page/Folio: 243 as Instrument No.: 009636 In East Providence City, Rhode Island

Assessor's/Tax ID No. 49972021

Property Address: 15 NINTH STREET, EAST PROVIDENCE, RI 02914

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $261,800.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On February 27th, 2009

By: _____
JOANN REIN, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On February 27th, 2009, before me, LINDA D. PARKS, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared JOANN REIN, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
LINDA D. PARKS
Notary Expires: 11/14/2011

```
GENERAL NOTARY - STATE OF NEBRASKA
LINDA D. PARKS
My Comm. Exp. 11/14/2011
```

(This area for notarial seal)

```
RECORDED
2009 Mar 13 09:23:41A
EAST PROVIDENCE, R.I.
KIM A. CASCI
CITY CLERK
```

<span style="color:red">EXHIBIT D</span>

**After Recording Return To:**
**CoreLogic SolEx**
**1637 NW 136th Avenue Suite G-100**
**Sunrise, FL 33323**

**This Document Prepared By:**
_____
**Nationstar Mortgage LLC d/b/a Mr. Cooper**
**8950 CYPRESS WATERS BLVD**
**DALLAS, TX 75019**

**Parcel ID Number:** ████████████

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| Original Recording Date: **September 28, 2005** | Loan No ██████ |
| Original Loan Amount: **$261,800.00** | Investor Loan No: ████████ |
| New Money: **$125,536.23** | |

## LOAN MODIFICATION AGREEMENT
### (Providing For Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 30th day of August, 2017, between **DANIELLE LEMA** ("Borrower") and **Nationstar Mortgage LLC d/b/a Mr. Cooper, whose address is 8950 CYPRESS WATERS BLVD, DALLAS, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **September 28, 2005** and recorded in Book/Liber **2545**, Page **243**, Instrument No: **009636** and recorded on **September 28, 2005**, of the Official Records of **CITY OF EAST PROVIDENCE, RI** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**15 NINTH ST, EAST PROVIDENCE, RI 02914,**

(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 1, 2017**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$347,100.79**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$93,100.79** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$254,000.00**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.250%**, from **September 1, 2017**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,101.40**, beginning on the **1st** day of **October, 2017**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.250%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **September 1, 2057**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and

none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender and Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [  ].

(g)     In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(h)     Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

7.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

8.    Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be

advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar Mortgage LLC d/b/a Mr. Cooper will not honor the loan modification agreement until evidence of the required approval is provided.

9.   By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10.   This Agreement modifies an obligation secured by an existing security instrument recorded in CITY OF EAST PROVIDENCE, RI, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $221,564.56. The principal balance secured by the existing security instrument as a result of this Agreement is $347,100.79, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

Date: 9-12-17

**DANIELLE LEMA** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

STATE OF RHODE ISLAND, _____Kent_____ County

On this _12_ day of _September_, 20_17_, before me, the undersigned Notary Public, personally appeared **DANIELLE LEMA**, personally known to the notary or proved to the notary through satisfactory evidence of identification, which was _Drivers License_, to be the person(s) whose name is signed on the preceding or attached document, and acknowledged to the notary that he/she signed it voluntarily for its stated purpose.

My commission expires : _____8/18/21_____

Signature of Notary

Edward J Gomes
Printed Name of Notary

**Nationstar Mortgage LLC d/b/a Mr. Cooper**

By: _____(Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____
The State of TX
County of Dallas

Before me _____/Notary Public (name/title of officer) on this day
               (Please Print Name)
personally appeared _____, the Assistant Secretary of Nationstar
Mortgage LLC d/b/a Mr. Cooper, known to me (or proved to me on the oath of _____ or
through _____ (description of identity card or other document)) to be the person
whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____, A.D.,_____.


_____
Signature of Officer

_____
(Printed Name of Officer)

  Notary Public
Title of Officer
My Commission expires : _____

## Exhibit "A"

Loan Number: ▮▮▮▮▮▮▮

**Property Address: 15 NINTH ST, EAST PROVIDENCE, RI 02914**

Legal Description:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND WITH ANY AND ALL BUILDINGS AND
IMPROVEMENTS THEREON SITUATED ON THE WESTERLY SIDE OF NINTH STREET IN THE
CITY OF EAST PROVIDENCE, COUNTY OF PROVIDENCE AND STATE OF RHODE ISLAND, AND
BOUNDED AND DESCRIBED AS LOT NO. TWO HUNDRED AND FORTY-FOUR (244) AND THE
SOUTHERLY FIVE (5) FEET IN WIDTH BY THE ENTIRE DEPTH OF LOT NO. TWO HUNDRED
AND FORTY-FIVE (245) ON THAT PLAT OF LAND ENTITLED, PLAT OF LAND IN SEEKONK
BELONGING TO JASHUA MAURAN SURVEYED SEPTEMBER 12TH 1845 COPIED BY CUSHING AND
WALLING NOVEMBER 18TH 1847, RECOPIED MAY 1877 BY S.B. CUSHING, WHICH SAID
PLAT IS RECORDED ON PLAT CARD 63 IN THE LAND EVIDENCE RECORDS FOR THE CITY OF
EAST PROVIDENCE.

Loan No.: ▮▮▮▮▮▮
Borrower: DANIELLE LEMA

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC d/b/a Mr. Cooper ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 15 NINTH ST, EAST PROVIDENCE, RI 02914 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_Danielle M. Lema_

DANIELLE LEMA  -Borrower          Date: 9-12-17

 ORIGINAL

Loan No. ▮▮▮▮▮▮▮
Borrower: DANIELLE LEMA

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, DANIELLE LEMA ("Borrower") desires Nationstar Mortgage LLC d/b/a Mr. Cooper ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated September 28, 2005, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a

Loan No.: ▮▮▮▮▮▮▮
Borrower: DANIELLE LEMA

deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_Danielle M. Lema_                    Date: 9-12-17

DANIELLE LEMA  -Borrower

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Danielle Lema** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF RHODE ISLAND |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:   List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| **2.1**   **City of East Providence**<br>Creditor's Name<br><br>**Dept 317-utility**<br>**P.O. Box 9714**<br>**East Providence, RI**<br>**02914**<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br><br>**15 Ninth Avenue East Providence, RI 02914   Providence County**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply. | $4,631.32 | $246,900.00 | $4,631.32 |

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   water/sewer bill

Date debt was incurred   2015/6     Last 4 digits of account number   4150

| | | | | |
|---|---|---|---|---|
| **2.2**   **Federal National**<br>**Mortgage Asoc**<br>Creditor's Name<br><br>**3900 Wisconsin Avenue,**<br>**NW**<br>**Bankruptcy Department**<br>**Washington, DC**<br>**20016-2892**<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br><br>**15 Ninth Avenue East Providence, RI 02914   Providence County**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply. | $0.00 | $246,900.00 | $0.00 |

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred     Last 4 digits of account number

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor 1 | **Danielle Lema** | | | Case number (*if know*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| 2.3 | **Nationstar Mortgage** | Describe the property that secures the claim: | **$330,124.80** | **$246,900.00** | **$83,224.80** |
|---|---|---|---|---|---|

Creditor's Name

**8950 Cypress Waters Blvd**
**Coppell, TX 75019**

Number, Street, City, State & Zip Code

**15 Ninth Avenue East Providence, RI 02914  Providence County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred _____    Last 4 digits of account number **0248**

---

| 2.4 | **Shechtman Halpern Savage** | Describe the property that secures the claim: | **$0.00** | **$246,900.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**1080 Main Street**
**Pawtucket, RI 02860**

Number, Street, City, State & Zip Code

**15 Ninth Avenue East Providence, RI 02914  Providence County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **NOTICE PURPOSES**

Date debt was incurred _____    Last 4 digits of account number _____

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$334,756.12** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$334,756.12** |

---

**Part 2:   List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---